John Prior *vs.* W. P. Comstock *et al.*

The city council of the city of Providence had, in 1883, no power, under the act of May 9, 1845, "An Act relative to the Harbor and Public Works of the Town of Providence," and the Act of May 4, 1848, bearing the same title, to give a railroad corporation, having its terminus in Providence, possession of the Moshassuck River above Haymarket Street.

Trespass Quare Clausum. Heard by the court, jury trial being waived.

*July* 27, 1889. Stiness, J. It appears by the testimony that at the time of the trespass set forth in the declaration the plaintiff was in possession of the close described, having driven piles and erected a platform thereon. The trespass alleged was the removal of the piles and platform, which is justified by the defendant corporation under a plea of title, the defendant Comstock acting simply as its agent. The defendant corporation sets up that prior to June, 1823, the land in question was flowed by the tides, and that the title to it was in the State; that then, under a charter granted by the General Assembly, it was condemned by the Blackstone Canal Company for its canal purposes; that in 1849 the General Assembly repealed the charter of the Canal Company, providing that the lands held and used for its canal purposes should revert to their former owners, whereby the possession was restored to the State; that under an act passed at the May session, 1845, authorizing the city of Providence to grant the right to establish a depot upon any part of the land covered by the public waters in said city above Weybosset Bridge, and an act passed at the May session, 1848, authorizing the city to grant the right to lay rails upon and over the public land and waters, the city council, by resolution approved December 28, 1883, authorized the defendant company to build a shed over the land in question, whereupon the company entered into possession thereof;

the plaintiff being himself a trespasser upon such possession in driving the piles which the defendant company removed.

The act repealing the charter of the Canal Company provided that the city might maintain the lock at the bridge near Haymarket Street, which, then and since, cut off both tides and navigation above it. The part of the cove above this lock formed a canal basin, the use of which ceased with the use of the canal itself. Incidental to the improvements attending the introduction of the railroads, Canal Street was laid out along the easterly side of the basin, nearly up to the line of the Moshassuck River; the railroads occupied the greater part of the basin west of the river; and thus the basin disappeared, leaving only the river channel with a narrow strip between it and Canal Street. This strip the plaintiff claims as riparian owner. The potential right of such owner to fill out, if permitted to do so by the State, and to transmit this right to others, is settled in *Brown* v. *Goddard*, 13 R. I. 76. Although it is not shown that the riparian owners, predecessors in title to the plaintiff, did any filling, nevertheless, in the absence of evidence that it was done by any other party under a claim of ownership, such filling inures to the benefit of the riparian owner. The strip may have been formed in making the street, or by accretion. But in the absence of any reservation or incompatible grant, the lay-out of a street in front of upland does not deprive the owner of his general riparian rights. It does not appear in this case that the State, since the repeal of the charter of the Canal Company, has exercised any act of ownership or possession over the land in question, or expressly asserted any claim thereto; or at any time interfered with the possession thereof otherwise than by the authority conferred upon the city in the acts of 1845 and 1848. The question then comes whether the State has intervened, through the action of the city, by reason of either of these acts. We think not. The acts were for the express purpose of enabling the city to provide a site for a depot, connection with the wharves through the streets, and necessary approaches over " public waters." The acts were passed before the repeal of the charter of the Canal Company, and while the basin was in its possession and control. Notwithstanding this, the city council, by its resolution passed February 17, 1846, embraced in the original grant to the Provi-

dence and Worcester Railroad Company the right to erect buildings " upon land filled in the canal basin." But for this action, we should see no reason to suppose that the term " land covered by the public waters " was intended or understood to authorize the grant of an inclosed basin, under the control of a private corporation. The term does not expressly cover it, and, after the lapse of forty years, we think it is too late to extend its scope by implication, beyond the action then taken. It is not improbable that the Canal Company, on the verge of dissolution, agreed to surrender a part of the basin, which was no longer required for canal purposes. But, however this may have been, we fail to see any authority on the part of the city to do more than it did in the resolution of 1846.

We conclude, therefore, that the resolution of the city council, passed in 1883, conferred no authority upon the defendant corporation to enter upon the land in question. We find from the testimony that the plaintiff was in possession of so much of the land described in the declaration as was covered by his structure, the boundaries of which have been agreed to by the parties by way of new assignment, and that he is entitled to judgment for the damages proved.

*Judgment for plaintiff for $35 and costs.*

*William W. Douglas, Samuel T. Douglas,* for plaintiff.
*Arnold Green,* for defendants.